IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRI HETTLER,                           :    No. 3:17cv1646
      **Plaintiff**              :
                               :    **(Judge Munley)**
    **v.**                             :
                               :
**INTREPID DETECTIVE AGENCY, INC.,**:
      **Defendant**              :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court is a motion for summary judgment filed by Defendant Intrepid Detective Agency, Inc., in this employment discrimination action. The matter has been fully briefed and is ripe for disposition.

**Background**

On September 28, 2014, Plaintiff Terri Hettler arrived at Romark Logistics, a worksite at which Defendant Intrepid Detective Agency, Inc. (hereinafter "Defendant Intrepid" or "defendant") provided security service. Upon arrival, the plaintiff met with Kalyn Bodnar, a supervisor for Defendant Intrepid. As we will discuss in greater detail below, the parties strongly disagree as to why the plaintiff was present at the site and the events that transpired during her time there.[1] The plaintiff contends that Bodnar had hired the plaintiff to work for

---

[1] The defendant contends that because the plaintiff filed her answer to the defendant's statement of facts two days past the allotted time, we should deem the defendant's facts to be admitted. Local Rule 56.1 clearly mandates an

Defendant Intrepid, and she arrived at Romark Logistics to complete her training. The plaintiff alleges that her employment was terminated during her training after the operations manager for Defendant Intrepid, James Kokinda, noticed that the plaintiff was pregnant. The plaintiff argues that the Defendant, through its employees Bodnar and Kokinda, communicated that plaintiff's pregnancy was a liability for Defendant Intrepid and because of that, they had to send her home. The plaintiff also alleges that the defendant discriminated against her because of her previous work as an exotic dancer. The defendant, however, argues that plaintiff came to the worksite that day because she was interested in a potential job. According to the defendant, Kayla Bodnar does not have the authority to hire employees. The defendant contends that the reason it did not hire the plaintiff was because the position had already been filled.

The plaintiff filed a two-count complaint on September 13, 2017, alleging discrimination on the basis of sex and pregnancy in violation of both Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. Upon completion of discovery, the defendant filed the instant motion for summary

---

answer to the moving party's statement of facts separate from the opposition brief. Here, an answer has been provided. Even though plaintiff's answer to the defendant's statement of facts was untimely, the defendant has not alleged any prejudicial effect. We will thus exercise our discretion and not deem the defendant's statement of facts admitted.

judgment. (Doc. 24).  Plaintiff filed a brief in opposition on November 30, 2018, and the parties subsequently filed reply and sur-reply briefs bringing the case to its present posture. (Docs. 26, 28, 31).

**Jurisdiction**

Because this case is brought pursuant to Title VII of the Civil Rights Act of 1964, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(C)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the

3

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

The plaintiff has brought the instant lawsuit pursuant to both Title VII and the PHRA for sex and pregnancy discrimination.[2] We will begin with plaintiff's claim for pregnancy discrimination.

I.      **Pregnancy Discrimination**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The term "because of sex" includes discrimination on the basis of pregnancy and women affected by pregnancy and childbirth. 42 U.S.C. § 2000e(k).

An employment discrimination case can proceed on two different theories, either direct evidence or indirect evidence of discrimination. Here, the plaintiff is proceeding with a "direct evidence of discrimination" theory. "Direct evidence" of discrimination is evidence that if believed would prove the discrimination without

---

[2] Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts ..."). Thus, PHRA violations are subject to the same analysis as ADA and ADEA claims, and no separate analysis is required. Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010).

inference or presumption. See Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir.1994). The evidence must meet two requirements: (1) it must be connected to the adverse employment action, and (2) it must "be strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [employer's] decision." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 269 (3d Cir. 2010) (quoting Walden v. Ga.-Pac. Corp., 126 F.3d 506, 515-16 (3d Cir. 1997)). When direct evidence is offered to prove that an employer discriminated against an employee, the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is not utilized, and the case proceeds as an ordinary civil suit. Casio, 42 F.3d at n3.

The plaintiff has presented direct evidence of discrimination. On September 28, 2014, the plaintiff, who was pregnant at the time, arrived at Romark Logistics where the defendant provided security service for job training. (Doc. 24-3, Dep. of Pl. at 24:8-11). Plaintiff had been offered the position by Kayla Bodnar, a supervisor for the defendant. (Doc. 24-4, Dep. of Kokinda at 13:15-19). While plaintiff was training with Bodnar, James Kokinda, the defendant's operations manager, showed up at the Romark Logistics site. (Id. at 12:8-9). Bodnar and Kokinda then discussed their concerns that the plaintiff may injure herself and her baby in the winter if she slipped on ice in the defendant's truck yard. (Doc. 24-5, Dep. of Bodnar at 18:2-20). Kokinda also said to Bodnar, "do you think

that's really the right thing to do if she's pregnant because of the site. It's very— there's a lot of traffic. There's a lot of, like, diesel fumes, and a lot of walking and I felt like it wasn't the most safest place for her to be being pregnant." (Doc. 24-4, Dep. of Kokinda at 15:21-25 and 16:1-4). Bodnar then informed the plaintiff that she needed to leave. (Doc. 26-5, Statement of Bodnar). In a written statement provided by Bodnar subsequent to plaintiff's termination, Bodnar noted that "Jim Kokind [sic] then expressed his concerns to [Bodnar] about [plaintiff] being pregnant. . . [Bodnar] was under the impression that this was a health risk and then informed [plaintiff] that this position could be dangerous to herself and her unborn child and because of that reason [Bodnar] had to send her home." Id.

On the other hand, the defendant has presented evidence that the plaintiff not only was never hired by the defendant, but never filled out an application for employment. Kayla Bodnar was a supervisor for the defendant but did not have the authority to hire employees. (Doc. 24-9, Intrepid Agency Handbook at 42). According to Kokinda, he told Bodnar that Defendant Intrepid could not hire the plaintiff because Kokinda had previously hired someone who had already begun training. (Doc. 24-4, Dep. of Kokinda at 13:19-23). Kokinda stated that he was only made aware of the plaintiff's pregnancy after he had already informed Bodnar that they could not hire the plaintiff due to the position being filled. (Id. at 15:15-19).

7

In light of the competing evidence that has been presented, we find that genuine issues of material fact exist, precluding summary judgment on this claim.

**II.     Sex Discrimination**

Plaintiff also raises a claim for sex discrimination under Title VII, alleging the defendant "did not deem Plaintiff to conform traditional gender stereotypes as an exotic dancer." (Doc. 26, Pl.'s Br. in Opp. at 16). The plaintiff alleges that the defendant did not view exotic dancing as an appropriate profession for a woman, and as such, chose to terminate her on that basis. The plaintiff contends that this is impermissible sex discrimination.

To prove discrimination on the basis of sex, plaintiff must first show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered some form of adverse employment action; and (4) that this action occurred under circumstances giving rise to an inference of unlawful discrimination, such as might occur when a similarly situated person not of the protected class is treated more favorably. Jones v. School Dist. Of Phil., 198 F.3d 403, 411 (3d Cir. 1999).

After a careful review of the record, we will grant summary judgment in favor of the defendant on this claim. As noted by the defendant, the plaintiff has not presented evidence that she was qualified for the position, as she has no experience in the security field. (Doc. 24-3, Pl.'s Dep. at 32:4-6). Plaintiff also

8

stated in her deposition that she has been arrested and convicted of disorderly conduct for engaging in a fight. (Id. at 69:1-4). She did not discuss the fact that she was an exotic dancer with anyone employed by the defendant. (Id. at 73:1-3). As admitted by the plaintiff, no one employed by the defendant ever saw her work as an exotic dancer, nor did anyone ever bring up this fact to her. (Id. at 72:12-25 and 73:1-7). The record reflects that Kokinda only learned of the plaintiff's employment as an exotic dancer after he had told Bodnar that the defendant could not hire the plaintiff, and to send her home. (Doc. 24-4, Dep. of Kokinda at 18:3-19).

Further, the plaintiff has not presented any case law permitting recovery under Title VII or the PHRA for gender stereotyping discrimination based upon a female's former employment as an exotic dancer. While courts recognize a wide variety of gender stereotyping claims, the underlying principle is that "Title VII prohibits discrimination against women for failing to conform to traditionally feminine demeanor and appearance." Prowel v. Wise Bus. Forms, Inc., 579 F.3d 285, 286-87 (3d Cir. 2009); see also Price Waterhouse v. Hopkins, 490, U.S. 228 (1989); Thomas v. Keystone Real Estate Grp. LP, No. 414-CV-543, 2015 WL 1471273 (M.D. Pa. March 31, 2015). Here, as noted by the plaintiff herself, most exotic dancers are female and exotic dancing is a female-dominated occupation. (Doc. 26, Pl.'s Br. in Opp'n. at 16). Thus, we find that this is not the kind of

alleged discrimination that Title VII was designed to protect. As such, we find that these facts are not sufficient to maintain a claim for sex discrimination.

**Conclusion**

For the foregoing reasons, we will deny summary judgment on plaintiff's pregnancy discrimination claims pursuant to Title VII and the PHRA. We will grant summary judgment in favor of the defendant on plaintiff's Title VII and PHRA sex discrimination claim concerning her employment as an exotic dancer.

**BY THE COURT:**

**Date: February 1, 2019**

**s/ James M. Munley_____**
**JUDGE JAMES M. MUNLEY**
**United States District Court**